IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SOPP SIGNS, LLC,

    Plaintiff,

       v.

CITY OF BUFORD, GEORGIA,

    Defendant.

CIVIL ACTION FILE
NO. 1:11-CV-2498-TWT

ORDER

This is a constitutional challenge to a city sign ordinance.  It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 9] and the Plaintiff's Motion for Summary Judgment [Doc. 10].   For the reasons set forth below, the Court GRANTS the Defendant's motion and DENIES the Plaintiff's motion.

## I.  Background

On April 5, 2011, Sopp Signs, LLC ("Sopp") filed five billboard applications with the City of Buford, Georgia (the "City").  The City denied the applications for failure to comply with the City of Buford Sign Ordinance (the "Sign Ordinance").  See Compl., Ex. A, which generally prohibits pole signs with more than 200 square feet and 20 feet in height.  Sopp appealed and the City's Zoning Board of Appeals upheld

the denial [see Doc. 9-2, Ex. B].  The Sign Ordinance is designed to promote public safety and preserve the aesthetics of the City of Buford.  (See id. § 1102.)

In February 2009, more than two years before Sopp filed its applications, the City granted a billboard application to H&B Property Investors, LLC ("H&B").  On March 20, 2009, however, the City revoked H&B's permit.  The City noted that the proposed sign was in violation of the Sign Ordinance.  The City and H&B eventually entered into a contract which resolved the permit issue.

On July 28, 2011, Sopp filed this lawsuit against the City of Buford.  Sopp argues that the City's actions violate the First and Fourteenth Amendments. Specifically, Sopp claims that the Sign Ordinance infringes free speech.  Further, the Plaintiff asserts that the City's denial of Sopp's permit, in light of the City's actions with respect to H&B, violates the Equal Protection Clause of the Fourteenth Amendment.  The same claims have been rejected by the Superior Court of Gwinnett County and this Court.  On April 2, 2012, the Defendant filed a Motion for Summary Judgment [Doc. 9].  On the same day, Sopp filed a Motion for Summary Judgment. [Doc. 10].  Sopp did not, however, respond to the City's motion.

## II.  Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists

and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The court should view the evidence and any inferences that may be drawn in the light

most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59

(1970).  The party seeking summary judgment must first identify grounds that show

the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S.

317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of material

fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

III.  Discussion

A.     First Amendment

First, Sopp claims that the Sign Ordinance violates the First Amendment.

"[T]he First Amendment offers less protection to commercial speech than to

noncommercial speech."  Gold Coast Publications, Inc. v. Corrigan, 42 F.3d 1336

(11th Cir. 1994).  To restrict commercial speech, the City must meet a two-part test.

Central Hudson Gas & Elec. Corp. v. Public Serv. Commission of New York, 447

U.S. 557, 564 (1980). "First, the restriction must directly advance the state interest

involved; the regulation may not be sustained if it provides only ineffective or remote

support for the government's purpose."  Id.  "Second, if the governmental interest

could be served as well by a more limited restriction on commercial speech, the

excessive restrictions cannot survive." Id.  "It is . . . well settled that both traffic safety and aesthetics are substantial governmental goals." Messer v. City of Douglasville, 975 F.2d 1505, 1510 (11th Cir. 1992) (citing Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 805 (1984)).  Further, "'the least restrictive means' is not the standard; instead, the case law requires a reasonable fit between the legislature's ends and the means chosen to accomplish those ends, . . . a means narrowly tailored to achieve the desired objective." Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 556 (2001) (internal quotations omitted).

In Gold Coast Publications, Inc. v. Corrigan, 42 F.3d 1336 (11th Cir. 1994), the plaintiff challenged a city ordinance regulating newsracks on public rights-of-way. The city claimed that the ordinance was motivated by safety and aesthetics.  Finding that the regulation was content neutral, the court held that the city's ordinance was appropriately tailored to meet its stated goals, despite the fact that the city could have addressed aesthetic concerns through more modest measures.  The court reasoned that "[w]henever government draws a line . . . [o]ne can always claim that a small change could have accommodated more conduct, at a little sacrifice in the government's objective." Id. at 1348.  "Choosing how much to accommodate at what sacrifice in other objectives is precisely the business of government, for the branches responsible to the people." Id.

Similarly, in <u>Members of City Council of City of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S. 789, 805 (1984), the plaintiffs argued that an ordinance banning signs on public property violated the First Amendment.  The Court held that the ordinance was constitutional.  First, the Court found that aesthetics were a substantial governmental interest.  Next, the Court found that the sign ban was narrowly tailored to address that interest.  Specifically, the Court reasoned that "the substantive evil-- visual blight--[was] not merely a possible by-product of the activity, but [was] created by the medium of expression itself."  <u>Id.</u> at 810; <u>see also</u> <u>Metromedia, Inc. v. City of San Diego</u>, 453 U.S. 490, 508 (1981) ("If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them. The city has gone no further than necessary in seeking to meet its ends.").   "Moreover, by not extending the ban to all locations, a significant opportunity to communicate by means of temporary signs [was] preserved."  <u>Id.</u> at 811.

Here, "both traffic safety and aesthetics are substantial governmental goals." <u>Messer</u>, 975 F.2d at 1510.  As in <u>Vincent</u>, the City's regulation is directly connected to those goals.  Indeed, the very act of erecting a billboard affects the City's aesthetics. <u>See Vincent</u>, 466 U.S. at 810 ("[T]he substantive evil--visual blight--[was] not merely

a possible by-product of the activity, but [was] created by the medium of expression itself."). Id. Thus, the Sign Ordinance is narrowly tailored to address a substantial government interest. See Metromedia, 453 U.S. at 508 ("If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them.").

"Moreover, by not extending the ban to all locations, a significant opportunity to communicate . . . [was] preserved." Id. at 811; compare Lorillard, 533 U.S. at 526-27 (finding restrictions on advertising, labeling, and sale of tobacco products were too onerous because they banned *all speech* within 1000 feet of schools). Here, as in Vincent, but unlike in Lorillard, the Sign Ordinance allows other types of commercial advertisement. Further, unlike Vincent, the Sign Ordinance allows billboards within sight of an interstate highway and allows smaller signs in other locations. (See Compl., Ex. A, § 1112.) For these reasons, there is no issue of material fact that the Sign Ordinance violates the First Amendment and the Defendant is entitled to judgment as a matter of law.

B.     Equal Protection

Next, the Plaintiff argues that the City's decision not to grant Sopp's sign permit violated the Equal Protection Clause of the Fourteenth Amendment. Specifically, the Plaintiff argues that H&B's billboard application was treated differently than Sopp's billboard applications. "To prevail on this traditional type of equal protection claim, basically a selective enforcement claim, . . . [the] Plaintiff[] must show (1) that [it was] treated differently from other similarly situated individuals, and (2) that [the] Defendant unequally applied a facially neutral ordinance for the purpose of discriminating against [the] Plaintiff[]." Campbell v. Rainbow City, 434 F.3d 1306, 1314 (11th Cir. 2006).

In Roma Outdoors Creations, Inc. v. City of Cumming, 599 F. Supp. 2d 1332 (N.D. Ga. 2009), the plaintiff challenged the denial of a variance application under the Equal Protection Clause. Previously, the defendant had mistakenly approved a similar application under the same sign ordinance. The court, however, held that no Equal Protection violation had occurred. The court reasoned that "the [defendant had] offered what the Eleventh Circuit deems a perfectly rational basis [for the different treatment]: the [defendant] mistakenly issued the earlier permits." Id. at 1344. The court noted that "[t]he fact that administrators in certain areas may have made errors in the application of the regulations does not mean that the correct evaluation made

in [plaintiff's] case violates the Equal Protection Clause." Id. at 1343 (quoting Cernuda v. Neufeld, 307 Fed. App'x 427, 433 (11th Cir. 2009)).

Here, as in Roma, the City of Buford mistakenly issued H&B's permit. Indeed, the City revoked that permit on March 20, 2009. Thus, "the [Defendant] has offered what the Eleventh Circuit deems a perfectly rational basis [for Sopp's different treatment]: the [Defendant] mistakenly issued the earlier permit[]." Id. at 1344. For this reason, there is no issue of material fact as to the Plaintiff's Equal Protection claim and the Defendant is entitled to judgment as a matter of law.

## IV.  Conclusion

For the reasons set forth above, the Court GRANTS the Defendant's Motion for Summary Judgment [Doc. 9] and DENIES the Plaintiff's Motion for Summary Judgment [Doc. 10].

SO ORDERED, this 5 day of July, 2012.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge